UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br>　　v.<br>CHRISTOPHER LUCK,<br>　　　　Defendant. | Case No. 5:12-cr-00888-EJD-2<br><br>**ORDER DENYING DEFENDANT'S REQUEST FOR COMPASSIONATE RELEASE**<br><br>Re: Dkt. No. 383 |

Defendant Christopher Luck is an inmate in the custody of the Bureau of Prisons ("BOP") and is housed at the Atwater Satellite Prison Camp in Merced County, California. *See* Defendant/Petitioner's Emergency Motion for Reduction of Sentence ("Mot.") at 1, Dkt. 383; *see also* Defendant/Petitioner's Reply to USA's Response ("Reply") at 1, Dkt. 387. Due to the ongoing COVID-19 pandemic, Defendant requests that he be compassionately released from prison pursuant to 18 U.S.C. § 3582. The Government opposes this request. *See* United States' Opposition to Defendant's Emergency Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3583(c)(1)(A)(i) ("Opp."), Dkt. 386. The Probation Office has provided the Court with a response to Defendant's application. The Court determines that the matter is suitable for a decision without a hearing and submits the matter on the papers. For the reasons provided below, the Court **DENIES** Defendant's motion for compassionate release.

**I.　　BACKGROUND**

In January 2015, Defendant plead guilty to three counts of conspiracy to commit mail, wire, and securities fraud. Mot. at 2. Defendant was sentenced to a term of 130 months' imprisonment. *Id.* He began serving his sentence on April 9, 2015—he is currently in month 61

of his sentence and has thus completed 54.9% of his sentence. *Id.* Defendant is eligible for home confinement starting January 2, 2024 and is projected for release on July 2, 2024. *Id.*

Defendant is a non-violent, first-time offender, with no history of sex crimes and has a zero criminal history score. *Id.* After five years at Atwater, he has had steady, continuous employment, has not had any incidents or write-up reports, and is considered to have a minimum risk of recidivism. *Id.* If released, Defendant plans to live with his girlfriend, Ms. Dana A. Edwards, at 444 Whispering Pine Drive in Scotts Valley, CA. *Id.* Ms. Edwards has no criminal history. She manages a children's dental and orthodontics practice in Santa Cruz, CA. *Id.*

On April 29, 2020, Defendant petitioned the warden at Atwater for relief in light of the COVID-19 pandemic. *See id.*, Ex. D. He requested two things. First, he requested compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). *See id.* Second, he referenced the reasons that he believed he "qualified" for such release; namely, that he suffers from significant health problems that make him particularly susceptible to COVID-19. *Id.* On May 1, 2020, Defendant alleges that he submitted a handwritten request for compassionate release to his caseworker. *Id.* at 2. The Government notes that BOP counsel indicated that BOP received this request from Defendant on May 5, 2020. Opp. at 2 & n.5. On May 18, 2020, the warden denied Defendant's request for a reduction in sentence. *See* Supplemental Declaration in Support of United States' Opposition ("Liao Supp. Decl."), Ex. 1, Dkt. 388.

**II.      LEGAL STANDARD**

18 U.S.C. § 3582(c) provides that a court may not modify a term of imprisonment once it has been imposed except "upon a motion of the Director of the Bureau of Prisons, or upon motion of the defendant." A defendant may bring a § 3582(c) motion only after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons" to bring the motion on his behalf, or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Upon such a motion, a court may modify a defendant's sentence "after considering the factors set forth in § 3553(a) to the extent applicable" if it finds "extraordinary and compelling reasons warrant such a reduction" and

"such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A)(i). The relevant Sentencing Commission policy statement sets forth several "extraordinary and compelling reasons." U.S. Sentencing Guidelines, § 1B1.13(1)(A) & cmt. 1. Namely, whether the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* § 1B1.13 cmt. 1(A)(ii). The Commission also requires that the defendant not pose a danger to the safety of the community. *Id.* § 1B1.13(2).

### III.  DISCUSSION

Defendant has satisfied the administrative exhaustion requirement. Therefore, the motion hinges on whether the risks presented by COVID-19, coupled with Defendant's health conditions, constitute "extraordinary and compelling reasons" for his release. *See United States v. Shields*, 2019 WL 2645028, at *2 (N.D. Cal. June 27, 2019).

The existence of the COVID-19 pandemic, without more, does not by itself constitute an "extraordinary and compelling reason" for release. Likewise, the mere fact that Defendant suffers from chronic conditions is insufficient. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release. *United States v. Ayon-Nunez*, 2020 WL 704785, at *2–3 (E.D. Cal. Feb. 12, 2020). Indeed, compassionate release is "rare" and "extraordinary;" the current national emergency does not change this. *See United States v. Mangarella*, 2020 WL 1291835, at *2–3 (W.D.N.C. Mar. 16, 2020) (noting that compassionate release is an extraordinary and rare event). Hence, generalized concerns about COVID-19, without other factors showing *present* extraordinary and compelling reasons to warrant modification of a sentence and immediate release from custody, are insufficient. *See United States v. Eberhart*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about *possible* exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence . . . ." (emphasis added)); *see also United States v. Robinson*, 2020 WL 1982872, at *2 (N.D. Cal. Apr. 27, 2020) (prison had nearly 100 confirmed coronavirus cases); *United States v.*

Case No.: 5:12-cr-00888-EJD-2
ORDER DENYING DEFENDANT'S REQUEST FOR COMPASSIONATE RELEASE
3

*Arceo*, 2020 WL 2614873, at *2 (N.D. Cal. May 22, 2020).

As Defendant concedes, Atwater does not have *any* confirmed cases. Reply at 4; *see also* Covid-19 Cases, https://www.bop.gov/coronavirus (last visited June 5, 2020). In rebuttal, Defendant argues that Atwater does not have any confirmed cases because they have not tested any inmates. Reply at 4; *see also United States v. Sarkisyan*, 2020 WL 2542032, at *2 (N.D. Cal. May 19, 2020) ("Nor is the Court persuaded by the Government's point that there have been no reported cases of COVID-19 at USP-Atwater. This statistic is meaningless, given the [Government's concession] that the facility has not tested any inmates or staff for the virus. If the Government wishes to argue that early release in this case (or any other case before this Court) is inappropriate because the defendant's facility has no reported cases of COVID-19, that claim must be adequately supported with actual test results from testing conducted by the Bureau of Prisons." (citations omitted)). Since the decision in *Sarkisyan*, BOP has begun testing inmates at Atwater. *See* Liao Supp. Decl. ¶ 2 ("[A]t least 22 inmates from locations all over USP Atwater (including different housing units and camp inmates) have been tested. . . . none have tested positive for COVID-19 so far (including at least 15 negative test results). . . . USP Atwater will be testing any incoming inmates upon arrival, and that there are currently no inmates exhibiting symptoms. In the event that an inmate develops symptoms, I understand from BOP counsel that the inmate will be moved to isolation and tested.").

In light of this current testing, and the negative results, Defendants risk of acquiring COVID-19 is merely hypothetical and without more particularized concerns, Defendant cannot meet 18 U.S.C. § 3582's requirements. *See, e.g.*, *Eberhart*, 2020 WL 1450745, at *2; *Arceo*, 2020 WL 2614873, at *2. The Court does not mean to minimize the risks that COVID-19 poses in the federal prison system, especially for inmates with underlying health conditions like Defendant. But, as other courts have noted, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Defendant's motion for

Case No.: 5:12-cr-00888-EJD-2
ORDER DENYING DEFENDANT'S REQUEST FOR COMPASSIONATE RELEASE
4

compassionate release is thus **DENIED.**

## IV.   CONCLUSION

For the above reasons, Defendant's motion for compassionate release is **DENIED.** Nothing in this Order should be construed as preventing Defendant from refiling a motion for compassionate release in the event of changed circumstances.

**IT IS SO ORDERED.**

Dated: June 8, 2020

EDWARD J. DAVILA
United States District Judge

Case No.: 5:12-cr-00888-EJD-2
ORDER DENYING DEFENDANT'S REQUEST FOR COMPASSIONATE RELEASE
5